U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

DEC 3 2015

FILED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)<br>GENERAL LINEN SERVICE, LLC )<br>of Somersworth, New Hampshire, formerly )<br>known as General Linen Service Co., Inc. ) | No. 1:15-cr- *211-01-SM* |

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, Donald Feith, the Acting United States Attorney for the District of New Hampshire, and the defendant, GENERAL LINEN SERVICE, LLC of Somersworth, New Hampshire, formerly known as General Linen Service Co., Inc. (hereafter "General Linen," "General Linen Somersworth," or "GLS") and the defendant's attorneys, Dennis Kelly, Esquire and Paul Mastrocola, Esquire, enter into the following Plea Agreement:

1. <u>The Plea and The Offense</u>.

The defendant agrees:   1) to plead guilty to the one count Information that charges it with intentionally accessing a protected computer without authorization, for the purpose of commercial advantage, in violation of Title 18, United States Code, Sections 1030(a)(2)(C) and (c)(2)(B)(i); 2) that it will implement internal corporate controls intended to insure that no-one within the entity will engage in conduct in the future in violation of 18 U.S.C. §1030; and, 3) at or before the sentencing, that the defendant will affirm the following:   Defendant has exercised due diligence and to the best of its knowledge, information and belief, all copies of invoices, digital or hard copy, obtained as a result of the conduct underlying the pending Information have been destroyed and

are therefore not, nor will they in the future be, available for viewing or use by defendant. In connection with civil litigation initiated by General Linen – Newburyport ("GLN") against GLS, (now pending in this Court, General Linen Services, Inc. v. General Linen Services Co., Inc., Civil No. 12-cv-111-LM) counsel for GLS will retain copies of said GLN invoices; however they will be destroyed upon final disposition of such civil litigation.

. In exchange for the defendant's guilty plea, the United States agrees that it will refrain from bringing further charges arising out of the conduct that forms the basis of this plea, and the United States agrees to the sentencing stipulations identified in section 6 of this agreement.

2. The Statute and Elements of the Offense.

§ 1030. Fraud and related activity in connection with computers
  (a) Whoever—
     ...
     (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—
        ...
        (C) information from any protected computer;
   ...
  shall be punished as provided in subsection (c) of this section.

  (c) The punishment for an offense under subsection (a) or (b) of this section is—
     ...
     (2)
     ...
     (B) a fine under this title or imprisonment for not more than 5 years, or both, in the case of an offense under subsection (a)(2), or an attempt to commit an offense punishable under this subparagraph, if--
        (i)    the offense was committed for purposes of commercial advantage or private financial gain;
        . . . .

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

One, the Defendant intentionally accessed a computer without authorization;

Two, by accessing a computer without authorization, the defendant obtained information from a computer that was used in or affected interstate or foreign commerce or communication;

Three, the offense was committed for the purpose of commercial advantage.

18 U.S.C. §1030(a)(2)(c) & (c)(2)(B)(i).

A "protected computer" includes a computer which is used in or affecting interstate or foreign commerce or communication. 18 U.S.C. §1030(e)(2)(B).

3. Offense Conduct.

At all times relevant to the Information in this case, General Linen-Newburyport ("GLN") is a family owned Massachusetts based company that sells and rents linens to hotels, restaurants, and other businesses. The linens include tablecloths, uniforms, and floor mats. GLN services all of New England, but most of its business is in Massachusetts and New Hampshire. One of GLN's competitors is the defendant, General Linen of Somersworth ("GLS"), business with a similar operation. Alliant Systems (Alliant), a company located in Irving, Texas, provided software to both GLN and GLS. Alliant's software allowed GLN to permit its customers to access GLN's, computer servers, via a remote Internet connection, one of the purposes being to allow those customers to view their invoices from GLN.

On or about April 1, 2010, a GLN customer informed GLN that a GLS salesman had, while making a sales call, left GLN invoices relating to other GLN customers. It was reported that such invoices had been used by the GLS salesman, and another GLS employee, in an apparent attempt to show that GLN was charging one or more other GLN customers less.

Upon learning that GLS was apparently viewing invoices issued by GLN, GLN conducted an internal investigation and determined that none of the customers whose invoices had been given to the customers referenced above by GLS had ever requested an actual hard copy invoice.

-3-

Consequently, based upon GLN's business practices, GLN had reason to believe that the invoices at issue had been downloaded from GLN's computer server, by way of accessing the server through Alliant's web portal software.

An investigation conducted by GLN, which included a review of computer log files provided by Alliant, showed that between September 30, 2009 and April 8, 2010 GLN's server, located in Massachusetts, had been accessed, via Alliant's web portal software, approximately 157 times by a person or persons not authorized to do so. The investigation showed that all authorized accesses to the web portal, including by GLN employees and GLN customers, were accounted for and were not included in the 157 instances referenced above. It also showed that the majority of the unauthorized accesses originated from an Internet Protocol address that was at the time assigned to and was being used by GLS at their business address in Somersworth, NH.

By cross referencing GLN's Internet Information Services logs (IIS logs) with the log files provided by Alliant, the Federal Bureau of Investigation (FBI) was able to confirm what GLN had initially found, that is, that the majority of the instances of unauthorized accesses of GLN's computer server in Massachusetts had been initiated through a computer or computers connected to the internet with an IP address that had been assigned to GLS at its business location in Somersworth, NH. No one at, or associated with, GLS was authorized to access the GLN web portal.

When initially installed, the Alliant software had a default user name and password of "admin" and "admin." Once installed, the owners of all systems to whom Alliant sells its product were advised that those default log in credentials should be changed to unique, secret log in credentials, and that all employees and customers who are authorized to access the system should

-4-

be issued unique log in credentials. The latter was done by GLN, but they did not change the default log in credentials of "admin" and "admin."

The former Information Technology (IT) director and the former sales manager of GLS, would testify at trial, *inter alia*, that the IT director, who was aware that both GLS and GLN used the same Alliant system, and knew that when such a system was initially installed it came with default log in credentials of "admin" and "admin," successfully attempted to gain access to GLN's server through the Alliant web portal access using the default credentials. After he told management at GLS what he had done, he shared the log in information with others at GLS, and he was aware that others at GLS did in fact access the server of GLN and did download GLN invoices. The former sales manager of GLS would testify at trial, *inter alia*, that individuals who worked at GLS did in fact log in to GLN's server, did in fact download GLN invoices, and that it was his intention, and the intention of others at GLS, that the invoices would be used to assist GLS in its sales efforts with respect to customers of GLN.

Through documents and testimony of a Special Agent with the FBI, the evidence at trial would establish that between September of 2009 and April 8, 2010 unauthorized intrusions were made of the GLN server by GLS employees and that approximately 1,100 invoices were downloaded, although a number of the downloaded invoices were duplicates and invoices were not downloaded during each unauthorized access.

4. Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

A maximum fine of $500,000. 18 U.S.C. §3571(c); and,

Not less than one (1), nor more than five (5), years of Probation. 18 U.S.C. § 3561(c)(1).

The defendant also understands that it will be required to pay a special assessment of $400 for the count of conviction, at or before the time of sentencing.

The Court may order the defendant to pay restitution to the victim of the offense, GLN, pursuant to 18 U.S.C. §3663. Before sentencing, and in good faith recognition of its misconduct, defendant will offer to tender voluntary restitution in this criminal case to GLN in the amount of $100,000.

5. <u>Sentencing and Application of the Sentencing Guidelines</u>.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that it has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or its sentence is other than it anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

   A.   Advise the Court of any additional, relevant facts that are presently known
        or may subsequently come to their attention;

   B.   Respond to questions from the Court;

   C.   Correct any inaccuracies in the pre-sentence report;

   D.   Respond to any statements made by its representative or its counsel to a
        probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

6. <u>Non-Binding Sentencing Stipulations and Agreements</u>.

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the parties agree that a sentence of two (2) years

of probation, and a fine within the advisory guideline range, is an appropriate disposition in this case

The parties also agree that Section 2B1.1 of the United States Sentencing Guidelines applies to the determination of loss, and that, based upon the information available to the parties at the time this Plea Agreement is signed, the loss is not less than $4,000 nor more than $15,000.

The defendant understands that the Court is not bound by the foregoing agreements and, with the aid of a pre-sentence report, the court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of the above agreements, such rejection by the Court will not be a basis for the defendant to withdraw its guilty plea.

7. <u>Waiver of Trial Rights and Consequences of Plea</u>.

The defendant understands that it has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent it. The defendant also understands that it has the right:

    A.     To plead not guilty or to maintain that plea if it has already been made;

    B.     To be tried by a jury and, at that trial, to the assistance of counsel;

    C.     To confront and cross-examine witnesses; and

    D.     To compulsory process for the attendance of witnesses to testify in its defense.

The defendant understands and agrees that by pleading guilty it waives and gives up the foregoing rights and that upon the Court's acceptance of the its guilty plea, he will not be entitled to a trial.

The defendant understands that if it pleads guilty, the Court may ask its agent or agents

questions about the offense, and if its agent or agents answer those questions falsely under oath, on the record, and in the presence of counsel, those false statements will be used against it in a prosecution for perjury or making false statements.

8. <u>Acknowledgment of Guilt; Voluntariness of Plea</u>.

The defendant understands and acknowledges that it:

A. Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because it is guilty;

B. Is entering into this Plea Agreement without reliance upon any promise of benefit of any kind except as set forth in this Plea Agreement;

C. Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D. Understands the nature of the offense to which it is pleading guilty, including the penalties provided by law; and,

E. Is completely satisfied with the representation and advice received from its undersigned attorney.

9. <u>Scope of Agreement</u>.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to it about any civil or administrative consequences that may result from its guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

10. <u>Satisfaction of Federal Criminal Liability; Breach</u>.

The defendant's guilty plea, if accepted by the Court, will satisfy its federal criminal

-8-

liability in the District of New Hampshire arising from its participation in the conduct that forms the basis of the Information in this case. The defendant understands that if, before sentencing, it violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

12. <u>Waivers</u>.

A. Appeal.

The defendant understands that it has the right to challenge its guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives its right to challenge on direct appeal:

1. Its guilty plea and any other aspect of its conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and,

2. All aspects of the sentence imposed by the Court if within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of its rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B. Collateral Review

The defendant understands that it may have the right to challenge its guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives its right to collaterally challenge:

1. Its guilty plea, except as provided below, and any other aspect of its

conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and,

2. All aspects of the sentence imposed by the Court if it falls within, or lower than, the guideline range as determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of its right to collateral review does not operate to waive a collateral challenge to its guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of its right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government.

13. <u>No Other Promises</u>.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, or revealed to the Court, and none

-10-

will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

14. Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

15. Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

Date: 11-23-2015

By: _____

Donald Feith
Acting United States Attorney

Arnold H. Huftalen
Assistant United States Attorney
NH Bar Association #1215
53 Pleasant St., 4th Floor
Concord, NH 03301
(603) 225-1552
arnold.huftalen@usdoj.gov

    I, Daniel Bresnahan, Director of Finance and Administration for General Linen Somersworth, the defendant, and empowered by corporate resolution to bind General Linen Somersworth, in the matter, have read this 12-page Plea Agreement. I fully understand and, on behalf of General Linen Somersworth, accept the terms thereof. A copy of the resolution empowering me to sign on behalf of, and to bind, General Linen Somersworth in this matter is attached.

Date: 11/17/15

By: _____
General Linen Somersworth, Defendant
Daniel Bresnahan
Director of Finance and Administration for
General Linen Somersworth

    I/we have reviewed and explained this 12-page Plea Agreement with Daniel Bresnahan, the Director of Finance and Administration for General Linen Somersworth, who is empowered to bind General Linen Somersworth, the defendant, and he has advised me/us that he understands and accepts its terms on behalf of General Linen Somersworth.

Date: 11/19/15

Dennis Kelly, Esq.
Attorney for General Linen Somersworth
MA Bar # 266340

Date: 11/19/15

Paul Mastrocola, Esq.
Attorney for General Linen Somersworth
MA Bar # 630664